IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JACKITH WYNN-HOWARD, and )
DIETRA WRIGHT, )
        Plaintiffs, )
                                     )
    v.                               ) Civil Action No. 06-0916
                                     )
UNITED STEELWORKERS OF               )
AMERICA, LOCAL 555T and              )
UNITED STEELWORKERS OF               )
AMERICA, INTERNATIONAL               )
        Defendants.                  )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                              March / 9 , 2008

    This is an action in employment discrimination.

Plaintiffs, Jackith Wynn-Howard and Dietra Wright, allege that

defendants, United Steelworkers of America, Local 555T and United

Steelworkers of America, International, harassed and

discriminated against them on the basis of their gender and race,

and retaliated against them for reporting such abuse, in

violation of Title VII of the Civil Rights Act of 1964, the

Pennsylvania Human Relations Act,[1] and 42 U.S.C.A. § 1981.

Plaintiffs seek monetary damages.

    The union has filed a motion for summary judgment [doc. no.

38] seeking entry of judgment on each of these claims. Also

_____

[1]     Claims under the PHRA are interpreted under the
        same standards as Title VII claims. Kelly v.
        Drexel Univ., 94 F.3d 102, 103 (3d Cir. 1996).

pending is the union's motions to strike plaintiffs' damages claims, and obtain compliance with discovery orders [doc. nos. 28, 33].

For the reasons set forth below, the motion for summary judgment will be granted. The union's remaining motions are therefore moot.

I.    BACKGROUND

Unless otherwise specifically indicated, the following material facts are undisputed. Other material facts will be discussed in the memorandum in context.

Both Wright and Wynn-Howard were terminated from their positions with Vesuvius McDanel Company on June 6, 2005. Both had worked for the company at its Beaver Falls, Pennsylvania plant, which manufactured ceramic rollers for the glass industry. Wright had been hired in 1993, and Wynn-Howard had been hired in 1996. Both Wright and Wynn-Howard were members of the defendant union while employed by Vesuvius. In fact, Wright was elected as Vice-President of the Local in 2001.

In February or March of 2005 Vesuvius informed the union that it planned to sell certain product lines to a third party, eventually known as McDanel Advanced Ceramic Technologies, LLC. In connection with this sale, the union entered into a May 19, 2005 Memorandum of Agreement with Vesuvius to address the

2

continued employment of its members.  Under the Agreement, Vesuvius employees were divided into two groups: (1) employees whom Vesuvius would not need after the sale, and whom McDanel could hire (available for hire employees); and (2) employees who would remain employed by Vesuvius.  The delineation was based mainly on what product lines the employee worked in, as compared to what product lines Vesuvius was selling to McDanel.  There were 56 employees listed as available for hire by McDanel after the sale, and 27 employees listed as being retained by Vesuvius.

The purpose of the Agreement was to prevent the union from invoking its layoff procedures, under which available for hire employees could have bumped retained employees based on seniority.  To Vesuvius, the union's layoff procedures would have forced it to hire more senior employees who were unfamiliar with the product lines it was keeping after the sale.  These more senior employees would require training in the retained product lines, an expense that Vesuvius was not willing to absorb as part of the sale.  There is no dispute that the Agreement, which was not approved by union members, unilaterally forfeited all union members' seniority rights.

As the sale was being finalized, the union began negotiations with McDanel, the buyer.  McDanel thrice rejected the union's attempts to obtain a guarantee that it would hire all displaced Vesuvius employees.  The union then proposed that

3

employment decisions regarding the available for hire Vesuvius employees be non-discriminatory and subject to its grievance procedures. McDanel rejected that proposal as well, indicating that it would have sole discretion over which former Vesuvius employees it would hire. Finally, the union proposed a lump sum payment to any former Vesuvius employee who was not hired by McDanel. McDanel agreed to this proposal, and it became part of the contract ultimately ratified by the union members.

All available for hire employees were required to fill out an employment application with McDanel. While most other such employees obtained positions with McDanel, McDanel did not extend offers of employment to Wright or Wynn-Howard. When union officials inquired of McDanel management regarding this decision, they were told that hiring decisions were at McDanel's sole discretion. McDanel refused to respond to the union's request for further information. The union did not have the right to grieve McDanel's hiring decision under the collective bargaining agreement.

Shortly after being notified that McDanel would not be hiring them, Wright and Wynn-Howard filed charges with the Equal Employment Opportunity Commission alleging discrimination against Vesuvius, McDanel, and the union. They complained about the June 2005 hiring decision, and detailed instances of harassment and discrimination throughout their careers with Vesuvius. However,

4

Wright and Wynn-Howard settled their claims against Vesuvius and McDanel in December of 2005. Months later, in April of 2006, Wright and Howard filed new charges with the EEOC, this time against the union only. The EEOC issued right to sue letters on April 6, 2006 (as to the 2005 charges) and September 28, 2006 (as to the April 2006 charges). The complaint in this case was filed on July 11, 2006.

## II.    STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, _i.e._ the material facts, however, will preclude the entry of

summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. <u>Id</u>. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. <u>Id</u>. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." <u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment. <u>Williams v. Borough of W. Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989) (citing <u>Celotex v. Catrett</u>, 477 U.S. 317, 324 (1986)).

The non-moving party has the burden of producing evidence to establish each element of his claim. <u>Celotex</u>, 477 U.S. at 322-23. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the

burden of production. <u>Anderson</u>, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec.</u>, 475 U.S. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in her favor. It is on this standard that the court has reviewed defendant's motion and plaintiff's response thereto.

III.    DISCUSSION

A.    Introduction

As an initial matter, we must be mindful throughout our analysis that this is an employment discrimination case against a union.    Wright and Wynn-Howard accuse the local and international union of harassing then, and discriminating and retaliating against them because of their race and their gender. Although Wright and Wynn-Howard initially made allegations against Vesuvius and McDanel, their former and potential employer, they settled their claims against these companies.

7

Therefore, Vesuvius and/or McDanel's discrimination against Wright and Wynn-Howard is not at issue in this case.

Although Wright and Wynn-Howard's complaint and summary judgment papers are not models of clarity, their summary judgment papers do indicate that their primary allegation against the union is that it conspired with Vesuvius and McDanel to ensure that Wright and Wynn-Howard would not be hired by McDanel after the product line sale. In particular, Wright and Wynn-Howard allege that the union negotiated the Memorandum of Agreement and the Collective Bargaining Agreement with the goal of discriminating against them, due to their race and gender. Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts at Fact Nos. 19, 51, 58, 65, 70 [doc. no. 42]; Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at 3 [doc. no. 43].

Wright and Wynn-Howard make other allegations regarding harassment and discrimination, but the focus of their claim is this alleged conspiracy. Even though the complaint and summary judgment opposition do not always clearly advance these other claims, we will construe the allegations of the complaint broadly and in plaintiffs' favor in determining whether any claim fairly pled in the complaint must be submitted to a jury.

B. Disposition of Claims

1. Timeliness of the Title VII Claim

(a) The 90 Day Filing Deadline

Both parties agree that under Title VII a complainant has 90 days to commence an action after receiving a right to sue letter. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(e); Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001). Both parties agree that the EEOC first issued right to sue letters to Wright and Wynn-Howard on April 6, 2006. Because neither plaintiff can establish when she actually received her right to sue letter, we presume that each received them three days after they were mailed, which would be April 9, 2006. Seitzinger v. Reading Hosp. & Medical Center, 165 F.3d 236, 239 (3d Cir. 1999). Plaintiffs filed their complaint in this action on July 11, 2006. Wright and Wynn-Howard never amended their complaint after the EEOC issued right to sue letters on their second set of charges in September of 2006. The July 11, 2006 filing date is outside of this 90 day period. In fact, Wright and Wynn-Howard do not dispute that they missed the 90 day filing deadline.

The 90 day filing period is not jurisdictional, but rather is akin to a statute of limitations. As such, it is subject to equitable considerations, such as tolling, waiver, and estoppel. Borough of Montrose, 251 F.3d at 470; see also DiCroce v. Norton,

9

218 Fed.Appx. 171, 173 (3d Cir. 2007) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)); compare Ruehl v. Viacom, Inc., 500 F.3d 375, 384 (3d Cir. 2007) (applying rule to an ADEA case). While plaintiffs claim, in a footnote of their opposition brief, that the union raised this issue for the first time at the summary judgment stage, in fact, the union pled the statute of limitations as an affirmative defense. Answer [doc. no. 6] at ¶30. This footnoted statement does not establish waiver or estoppel.

In fact, in the body of their brief, Wright and Wynn-Howard do not argue that the 90 day limitations period should be subject to some equitable principle. Rather, they contend that an exception applies. According to plaintiffs, because this case was pending when the EEOC issued right to sue letters on their second set of charges, the initial filing violation is somehow cured. We are not persuaded by that argument. First, plaintiffs cite to no controlling precedent. Second, the cases that they cite do not stand for the proposition for which they are cited. Third, the cases do not address the 90 days limitations period in a dual-charge situation. And finally, the exception, as stated by plaintiffs themselves, applies to the need to file a new complaint, or amend the existing one, when the second right to sue letter is issued, not to whether the late filing of an

initial complaint is cured when a second right to sue letter is issued.

Wright and Wynn-Howard's remaining arguments that issuance of a second right to sue letter or the filing of an amended complaint can cure an initial violation of the 90 day deadline are similarly flawed. First, the cited case law is not controlling. Second, the cases do not stand for the proposition for which they are cited. Third, the cases do not address a dual-charge situation, as present in this case. And finally, because plaintiffs never filed an amended complaint in this case, many of these arguments are not applicable.

Wright and Wynn-Howard also argue that judicial economy would be served by allowing the Title VII case to proceed because they also pled a section 1981 claim. However, the same standards apply to both of these claims, and plaintiffs' section 1981 claim will suffer the same substantive fate as their Title VII claim. As such, the court's jurisdiction over the section 1981 claim does not warrant applying some exception to the statute of limitations based on judicial economy, even assuming that such an exception exists.

Wright and Wynn-Howard have made no showing that the 90 day deadline should be extended under any applicable equitable principle. Their arguments as to why the deadline should not apply to this case are unpersuasive. There is no dispute that

11

the only complaint filed in this case was filed outside of the 90 day deadline. Therefore, the Title VII claims are untimely. It is appropriate to enter judgment in defendants' favor on the Title VII, and PHRA, claims on that basis alone.

### (b) The 300 Day Period

Even were Wright and Wynn-Howard's Title VII claims timely, they would be severely limited under the 300 day rule. To bring a Title VII claim in federal court in Pennsylvania a charge of employment discrimination must be filed within 300 days of the alleged unlawful act. 29 U.S.C. § 2000e-5(e)(1); Borough of Montrose, 251 F.3d at 472. Wright and Wynn-Howard filed their second charges of discrimination against the union on April 3, 2006. As such, under the 300 day rule, the only events found in the second charge that are timely are those that occurred on or after June 18, 2005. Both Wright and Wynn-Howard were terminated on June 6, 2005, almost two weeks before this cut off date. It is not possible that the union, which had no right to grieve their termination under the Collective Bargaining Agreement, practiced discrimination against Wright and Wynn-Howard after their employment had been terminated. Nor do plaintiffs even allege that the union did so. Therefore, the substance of Wright and Wynn-Howard's case against the union would be limited to those events recited in the original EEOC charges.

12

Plaintiffs' reliance on the continuing violation theory does not advance their cause. As they recognize in their own briefs, under that theory events that fall outside of the 300 day period can relate back as long as one in a series of related acts falls within the limitations period. Plaintiffs' Opposition Brief [doc. no. 43] at p. 12. None of the discriminatory acts detailed in the April 2006 charges occurred within the 300 day time period applicable to this case.

Moreover, the continuing violation theory only applies to discriminatory acts that are not individually actionable. O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006). Discrete acts that are individually actionable must be raised within the applicable limitations period, even if they relate to claims otherwise raised in a timely complaint. O'Connor, 440 F.3d at 127 (citing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)). Therefore, the continuing violation theory does not apply under the facts of this case.

As such, even if plaintiffs' Title VII claims could proceed against the union, any allegations made in the 2006 charges would be excluded from consideration under the 300 day rule. This would greatly curtail their claims as the focus of the original charge was the conduct of Vesuvius and McDanel, not the union.

(c)     <u>Summary</u>

Wright and Wynn-Howard's Title VII and PHRA claims are all time barred because no federal complaint was filed within 90 days of receipt of the April 6, 2006 right to sue letter. Nor did plaintiffs ever file a second complaint, or amend their existing one, upon the EEOC's issuance of right to sue letters based on their second set of charges. Furthermore, putting aside this issue, even if plaintiffs could proceed with their Title VII/PHRA claims, the substance of those claims would be limited to the allegations made in the original charges filed with the EEOC in 2005. Because the focus of the original EEOC charge was Vesuvius's and McDanel's alleged discrimination, this would greatly curtail Wright and Wynn-Howard's current case against the union.

However, despite these procedural bars to Wright and Wynn-Howard's Title VII/PHRA case, we nonetheless go on to substantively consider all of their allegations, without regard to whether a particular claim or allegation is time barred. By doing so, we ensure that there is no possibility that plaintiffs could prevail at trial on any one of their claims, making disposal of this case on summary judgment the appropriate course of action.

## 2.  Discrimination Claims

Wright and Wynn-Howard acknowledge that their primary complaint against the union is that it failed to adequately represent them in negotiations of the Memorandum of Agreement and Collective Bargaining Agreement because they are African-American and female.  They also intimate that the union mishandled their past grievances for the same reasons.

A union has obligations under both Title VII and the National Labor Relations Act to fairly represent its members without regard to their race or gender.  Although Wright and Wynn-Howard have not pled a cause of action under the NLRA, we will analyze both causes of action here to determine whether there is any theory under which plaintiffs could possibly prevail at trial.

### (a) Factual Predicate of Claims Against Union

First, we will summarize the evidence on which plaintiffs rely in making discrimination claims against the union.  Wright and Wynn-Howard claim that, before the Memorandum of Agreement was even negotiated, McDanel informed the union that it would not hire Wright and Wynn-Howard, because of their race and gender.  According to plaintiffs, the union agreed with McDanel's plan and negotiated the Memorandum of Agreement and the Collective Bargaining Agreement to ensure McDanel's desired result.  This

theory is without any basis in fact.

Wright and Wynn-Howard contend that they have three pieces of circumstantial evidence to support this theory: (1) the union surrendered their seniority rights in the Memorandum of Agreement; (2) Mr. Whitmore stated that if McDanel came after "your people", he would ensure that Mr. Tranter was also not hired; and (3) Wright, Wynn-Howard, and Tranter were the only Vesuvius employees not hired by McDanel. Even if each of these alleged facts were supported by the record, none of them would prove racial and gender discrimination on the part of the union, regardless of the legal theory being advanced.

The first fact is undisputed - the Memorandum of Agreement surrendered the union members' seniority rights. There is also no dispute that the Agreement surrendered all union members' seniority rights, regardless of race, gender, or any other protected status. Plaintiffs have presented no evidence that the surrender of seniority rights was motivated by the union's desire to discriminate against them due to their gender or race. Their suppositions and beliefs that this was the union's motivation are not evidence. Therefore, the fact that the Memorandum of Agreement surrendered the seniority rights of all union members is irrelevant to any claim of racial or gender discrimination.

As to the second piece of evidence, although there is a dispute as to whether Mr. Whitmore used the words "you people" or

16

"your people", the dispute is without consequence. Regardless of the exact terminology used, plaintiffs cannot dispute that Mr. Whitmore made the same comment to union members outside of their protected class. As such, no reasonable juror could conclude that Mr. Whitmore intended to refer to only African-American females when he used the phrase "your people" in conversation with men, women, Caucasians, and African-Americans. Moreover, Mr. Whitmore was not a union official at the time he made the statement. As such, even if the statement meant what plaintiffs claim that it meant, this fact would still not advance any of plaintiffs' discrimination claims against the union. Finally, the statement, even if interpreted as plaintiffs contend, would be evidence of McDanel's intent to discriminate on the basis of race and gender, not the union's.

And finally, evidence that Wright, Wynn-Howard, and Tranter were the only employees not hired by McDanel does not prove gender or race discrimination. Even assuming that these were the only three people not hired by McDanel, a fact that the union challenges, this does not prove that the union conspired to ensure that Wright and Wynn-Howard would not be hired by McDanel. The union did not decide which employees would be listed as available for hire - Vesuvius did. The union did not decide whom to hire from the available for hire list - McDanel did. Despite its efforts, the union had no right to grieve McDanel's hiring

17

decisions in the Collective Bargaining Agreement. To the extent union officials inquired as to McDanel's hiring decision, they did so in an unofficial capacity, as is evidenced by the fact that McDanel refused to substantively respond, and the union had no recourse.

Presented with only this evidence, which is all that plaintiffs have produced in opposition to summary judgment, no reasonable juror could conclude that the gender and race neutral Memorandum of Agreement, and the gender and race neutral Collective Bargaining Agreement were nothing more than a well-disguised vehicle to discriminate against Wright and Wynn-Howard. Wright and Wynn-Howard can no longer rely on their allegations and suppositions regarding why they were not hired by McDanel. A plaintiff's subjective belief that race or gender played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination. <u>Jones v. United Parcel Service</u>, 214 F.3d 402, 407 (3d Cir. 2000).

Further, although not discussed in their opposition brief, it appears that Wright and Wynn-Howard contend that the union failed to adequately represent them, or represented them on a discriminatory basis, when they filed grievances with the union over the course of their employment with Vesuvius. Apart from the fact that plaintiffs have failed to specifically identify any evidence to prove this theory, or include any argument on this

point in their summary judgment papers, we find these allegations
to be similarly unsupported. Viewing the record as a whole,
there is no evidence that the union mishandled any of Wright or
Wynn-Howard's past grievances, or treated their grievances
differently on the basis of their gender or race. Rather, the
record reflects that the union followed its procedures, and
reasonably exercised its judgment, in pursuing them. No
reasonable juror could conclude that the union discriminated
against Wright or Wynn-Howard in how it handled past grievances.

### (b) NLRA Fair Representation Claim

Even though neither Wright nor Wynn-Howard has made a claim
under the National Labor Relations Act, we will analyze their
allegations under the standards that would be applicable to this
cause of action. We do so in order to ensure that an amendment
to the complaint would, at this point, be futile.

The duty of fair representation exists because the NLRA
deprives "individuals in the [collective bargaining] unit of the
ability to bargain individually or to select a minority union as
their representative" and therefore it is necessary to ensure
that individuals are not "deprived of all effective means of
protecting their own interests...." DelCostello v. Int'l
Brotherhood of Teamsters, 462 U.S. 151, 164 n.14 (1983); see also
Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,

19

493 U.S. 67, 86-87 (1989); Masy v. New Jersey Transit Rail Operations, Inc., 790 F.2d 322, 327-28 (3d Cir. 1986). The duty requires unions to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177 (1967) (citation omitted). If a union has acted rationally within a relative "wide range of reasonableness," its conduct will not be in violation of the duty of fair representation. Airline Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 75 (1991) (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)).

Wright and Wynn-Howard have no evidence that the union negotiated the Memorandum of Agreement or the Collective Bargaining Agreement, or handled their past grievances in violation of the duty of fair representation. As detailed above, Wright and Wynn-Howard have no evidence that the union was motivated by discriminatory animus, or treated them differently than any other union member due to their gender or race. Bald assertions and suppositions are insufficient at this point in the case. Jones, 214 F.3d at 407. Thus, even were plaintiffs to have pled a NLRA claim, it would not survive summary judgment.

### (c) Title VII Claim

It is Wright and Wynn-Howard's contention that the union violated Title VII by discriminating against them in negotiating the Memorandum of Agreement and Collective Bargaining Agreement, and handling past grievances. Under Title VII, unions are prohibited from discriminating on the basis of a protected status for the same reasons as employers. McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 285 (1976). Where a union instigates or actively supports the discriminatory acts perpetrated on an employee, it too is liable under Title VII. Anjelino v. New York Times Co., 200 F.3d 73, 95-96 (3d Cir. 1999). To establish a prima facie case of discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her position; and (3) she suffered an adverse employment action "under conditions that give rise to an inference of unlawful discrimination." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Geraci v. Moddy-Tottrup, Int'l, Inc., 82 F.3d 578, 580-81 (3d Cir. 1996). This requires that a plaintiff present sufficient evidence to allow a fact finder to conclude that the employer is "treating some people less favorably than others because of their race, color, religion, sex, or national origin." Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999).

Wright and Wynn-Howard have presented no facts indicating that the union treated them less favorably than other union

members due to their gender and race. The Memorandum of Agreement forfeited all union members' seniority rights, regardless of race or gender. The Collective Bargaining Agreement does not contain any race or gender classifications, and plaintiffs have failed to demonstrate any discriminatory motivation behind or impact of that Agreement. Mr. Whitmore's "your people" comment does not prove that the union discriminated against them on the basis of their race and gender. First, the comment was made when Mr. Whitmore was no longer a union official. Second, to the extent it evidences discrimination, it evidences McDanel's discrimination, not the union's. There is no evidence that the union instigated or actively supported Vesuvius's and/or McDanel's alleged discrimination against Wright or Wynn-Howard.

Nor is there any evidence that the union executed its grievance procedures in a discriminatory way. As with many of their other claims, plaintiffs have not specifically responded to the union's citation to the evidence on this claim. Instead, the court must extrapolate from the record the basis for plaintiffs' theory that the union handled their grievances differently than other employees' because they are African-American females. Upon review of the entire record, there is no evidence that the union addressed Wright and Wynn-Howard's grievances differently than any other employee's.

Wright and Wynn-Howard rely exclusively on their own unsupported statements and suppositions in attempting to prove discrimination. In the final analysis, plaintiffs' conspiracy theory is simply implausible, and wholly without support in the record. Based on the evidence of record, no reasonable juror could find that there is evidence of a discriminatory intent on the part of the union. Because Wright and Wynn-Howard have not produced any evidence raising an inference of unlawful discrimination against the union, they have failed to establish a <u>prima</u> <u>facia</u> case. Therefore, it is appropriate to enter judgment in the union's favor on the Title VII, and PHRA, discrimination claims.

### 3.   Harassment Claims

#### (a) Hostile Work Environment

Wright and Wynn-Howard alleged that the union created a hostile work environment during their employment with Vesuvius. Wright and Wynn-Howard have included no evidence or argument regarding this claim in their opposition to the union's motion for summary judgment. While we could enter judgment in the union's favor on that basis alone, we will consider this claim on its merits.

In order to establish a claim for hostile work environment, plaintiff must establish that: (1) she suffered intentional

23

discrimination because of her protected status; (2) the
discrimination was "pervasive and regular"; (3) she was adversely
affected by the discrimination; (4) the discrimination would
adversely affect a reasonable person of the same protected
status; and (5) that respondeat superior liability applies.
Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999).
Relevant circumstances include "the frequency of the
discriminatory conduct; its severity; whether it is physically
threatening or humiliating, or a mere offensive utterance; and
whether it unreasonably interferes with an employee's work
performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23
(1993).

Because Wright and Wynn-Howard have failed to provide
citation to any evidence on this count, we have attempted to
extrapolate the substance of their hostile work environment claim
from the record, as a whole, without regard to admissibility at
this point. They allege that the union created a hostile
environment in the following ways: (1) Mr. Whitmore, who at some
relevant times was a union official, would flirt with them; (2)
Mr. Birch, who was not a union official at any relevant time,
would make sexual comments to them; (3) co-workers, some of whom
happened to hold union office, would engage in sexual
discussions, and relationships, at the factory; and (4) African-
Americans were elected officers of the union only when "nothing

24

important was happening" and were not given the same respect by their co-workers as Caucasian union officers. These instances of alleged racial and sexual harassment occurred over a period of approximately 10 years of employment.

Plaintiffs have not, and cannot, satisfy the legal requirements to succeed on their hostile work environment claim against the union. Plaintiffs bear the burden of proving each of the elements of this claim at trial. They have made no attempt to identify any evidence in support of this claim, and made no argument as to why it must proceed to trial. Upon our independent review, we find that the record is devoid of any showing that the harassment was "pervasive and regular," or would adversely affect a reasonable person of the same protected status. In the context of a ten year term of employment, it does not appear that the conduct was particularly frequent. Plaintiffs have not presented any evidence that the harassment was physical or interfered with Wright and Wynn-Howard's ability to perform their jobs. Nor have Wright and Wynn-Howard proven that the union should be responsible for the actions of non-union officials, or union official co-workers, while they were on the job and not engaged in union activities.

No reasonable juror could find that the union is responsible for a hostile work environment at Vesuvius. As such,

25

it is appropriate to enter judgment in the union's favor on this claim as well.

### (b) Quid Pro Quo

Another of Title VII's protections is the prohibition on carrying out threats in retaliation for an employee's refusal to succumb to sexual advances. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751 (1998). "[A] plaintiff may prove a claim of quid pro quo sexual harassment by showing that 'his or her response to unwelcome advances was subsequently used as a basis for...[an adverse employment action]'". Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281-82 (3d Cir. 2000) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1297 (3d Cir. 1997)). Although Wright and Wynn-Howard again include no law, argument, or facts relating to this claim in their summary judgment papers, it is referenced in their complaint and in order to be thorough, we will analyze this cause of action to determine whether it must proceed to trial.

We find that there is no genuine issue of material fact as to whether Wright or Wynn-Howard suffered quid pro quo sexual harassment. There is no evidence that union officials took, or encouraged, adverse tangible employment action against them because they rebuffed sexual advances from union officials. In fact, Wright specifically denied in discovery that any such quid

pro quo arrangements were ever presented to her by union officials. No reasonable juror could find that either plaintiff suffered quid pro quo sexual harassment at the hands of the union.

### 4. Retaliation

Wright and Wynn-Howard assert a retaliation claim in their complaint against the union. However, again, although the union has moved for summary judgment on this claim, plaintiffs have not responded with either argument or evidence. Although this alone is sufficient reason to enter judgment in favor of the union on these claims, the result would be the same even were we to reach the retaliation claim on the merits.

We gather that Wright and Wynn-Howard contend that the union participated in the McDanel termination scheme to retaliate against plaintiffs for asserting their rights to be free of gender and racial discrimination in the workplace, by filing union grievances. To establish a prima facie case of retaliation, plaintiff must demonstrate, among other things, a causal connection between participation in the protected activity and the adverse action. Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995) (citing cases). Wright and Wynn-Howard have adduced no evidence of a causal connection between their past complaints of discrimination, which spanned many years, without

27

alleged retaliation, and the union's participation in the alleged McDanel termination scheme. Upon independent review of the record, we can extrapolate no evidence that would establish this causal connection such that a reasonable juror could rule in Wright and Wynn-Howard's favor on this claim.

Wright and Wynn-Howard's theory regarding the union's desire to get back at them for bringing discrimination complaints amounts to nothing more than unsupported allegations and suspicions, which are insufficient at the summary judgment stage. Jones, 214 F.3d at 407. Thus, it is appropriate to enter summary judgment in the union's favor on the retaliation claim.


5. Section 1981 Claims

The union seeks summary judgment on Wright and Wynn-Howard's section 1981 claim. Plaintiffs identify no evidence supporting such a claim, and do no more than refer generally to section 1981 in their opposition brief. Regardless, plaintiffs' section 1981 claim is analyzed under the same burden-shifting framework as their Title VII claim, and suffers the same fate. Pamintuan v. Nanticoke Memorial Hosp., 192 F.3d 378, 385 (3d Cir. 1999); Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999).

Just as Wright and Wynn-Howard have no evidence to support a claim under Title VII, they have no evidence to support a

section 1981 claim. It is appropriate to enter judgment in favor of the union on this count as well.

## IV.    CONCLUSION

For the foregoing reasons, we conclude that no reasonable juror could find in favor of Wright or Wynn-Howard on any of their claims. As such, we will enter judgement in the union's favor on all counts.

This ruling makes the union's discovery motions moot.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JACKITH WYNN-HOWARD, and )
DIETRA WRIGHT, )
      Plaintiffs, )
          )
      v. )  Civil Action No. 06-0916
          )
UNITED STEELWORKERS OF )
AMERICA, LOCAL 555T and )
UNITED STEELWORKERS OF )
AMERICA, INTERNATIONAL )
      Defendants. )

## ORDER

Therefore, this 19 day of March, 2008, IT IS HEREBY
ORDERED that defendant's motion for summary judgment [doc. no.
38] is GRANTED.

IT IS FURTHER ORDERED that judgment shall be entered in
favor of defendant on all claims and that the Clerk of Courts
shall mark this case closed.

BY THE COURT:

_____, J.

cc:   All Counsel of Record